







**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GEORGE HERMAN, individually; JACQUELINE HERMAN, individually; JACQUELINE HERMAN as mother and next friend of DARIUS HERMAN and ACHILLES HERMAN, minors; SHAVANNA DURHAM, individually; JASON DURHAM, Sr. individually; SHAVANA DURHAM as mother and next friend of JASON DURHAM,Jr., JAMESE ALSTON, JAMELL SMITH, JAVELL SMITH, and JOCQUI WARDELL, minors.
Plaintiffs,

No.
Judge
Magistrate Judge

**06CV6888**
**JUDGE BUCKLO**
**MAG. JUDGE COLE**

-vs-

COUNTY OF LAKE, ILLINOIS; LAKE COUNTY METROPOLITAN ENFORCEMENT GROUP; LAKE COUNTY METROPOLITAN ENFORCEMENT OFFICERS K. FREE, ZIMMERMAN, GRUNDER, DADOR, HOBSON, DUMONT, FOY, SULLIVAN, JIMINEZ, TOKARZ, RODRIGUEZ, PENORELLI, WUBBEN, NOSBAUM, WILLETS, SCHULTZ, AND KROPP (first names unknown)
Defendants.

**JURY DEMANDED**

**COMPLAINT**

NOW COME the Plaintiffs, George Herman; individually, Jacqueline Herman, individually; Jacqueline Herman as mother and next friend of Darius Herman and Achilles Herman, minors; Shavana Durham, individually; Jason Herman, individually; Shavana Durham as mother and next friend of Jason Durham, Jr., Jamese Alston, Jamell Smith, Javell Smith, and Jocqui Wardell, minors, by their attorneys, Gregory X. Gorman and James A. Stamos, and complains against the Defendants County of Lake,

Illinois; Lake County Metropolitan Enforcement Group; Lake County Metropolitan Enforcement Group officers K. Free, Zimmerman, Grunder, Dador, Hobson, Dumont, Foy, Sullivan, Jiminez, Tokarz, Rodriguez, Penorelli, Wubben, Nosbaum, Willets, Scultz, and Kropp (first names unknown), as follows:

**JURISDICTION AND VENUE**

1. This action arises under the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983, as amended ("Section 1983"); 42 U.S.C. Sec. 1985; and 42 U.S.C Section 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiffs also plead supplemental state law claims.

2. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. This action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. Section 1391 (b), as Defendants are located in this judicial district, the Plaintiffs reside in this judicial district, and the claims arose in this district.

4. Plaintiffs George Herman, individually; Jacqueline Herman, individually; Jacqueline Herman as mother and next friend of Darius Herman and Achilles Herman, minors; Shavana Durham, individually; Jason Durham, individually; and Shavana Durham as mother and next friend of Jason Durham, Jamese Alston, Jamell Smith, Javell Smith and Jocqui Wardell, minors, were at all times relevant herein, residents of the United States, the State of Illinois, the County of Lake, Illinois, and the City of Waukegan, Illinois and were entitled to all the rights, privileges and immunities guaranteed to residents of the United States under the Constitution and Laws of the United States, including the right to be free from illegal search and seizure, arrest and

imprisonment without probable cause.

5. The individual Officer Defendants K. Free, Zimmerman, Grunder, Dador, Hobson, Dumont, Foy, Sullivan, Jiminez,, Tokarz, Rodriguez, Penorelli, Wubben, Nosbaum, Willets, Schultz and Kropp (first names unknown, hereinafter the "Defendant Officers") were, at all times relevant to this Complaint duly appointed and acting as a police officers employed by Defendant Lake County Metroploitan Enforcement Group ("LCMEG") and the County of Lake, Illinois, which were responsible for the policies, practices, customs and training of the LCMEG and its officers, including the Defendant Officers.

**FACTS COMMON TO ALL CAUSES OF ACTION**

6. At all times material herein, the County of Lake and the LCMEG employed the Defendant Officers and provided them with official badges and credentials, uniforms and weapons.

7. The Plaintiffs are George Herman and Jacquelin Herman, adults and the parents of Darius Herman and Achilles Herman; Shavana Durham and Jason Durham, the adult parents of Jason Durham Jr., Jamese Alston, Jamell Smith, Javell Smith and Jocqui Wardell, minors.

8. At the time of their arrests, and the other incidents described hereinafter, the minors were of the following age: Achilles Herman, age 16; Darius Herman, age 12; Jason Durham, Jr., age 6; Jamese Alston, age 12; Jamell and Javell Smith, twins aged 10; Jocqui Wardell, age 8.

9. At all times material herein, the Defendant Officers engaged in the conduct complained of under color and pretense of the statutes, ordinances, regulations, customs and usages of Lake County, the LCMEG, and the State of Illinois, and were acting in the course of and scope of their employment.

10. On or about December 14, 2005 at approximately 4:45 p.m. the Plaintiffs were lawfully inside their home at 915 Yeoman Avenue, Waukegan, Illinois, or just outside of it, as will be described more fully hereinafter.

11. At all times relevant hereto, the Defendant Officers were acting in their capacities as duly appointed police officers for the LCMEG and the County of Lake.

12. At the time and place above described the Defendant officers were engaged in an investigation involving a contemplated drug bust in connection with a suspect named Gordon Keith Hicks, a suspected dope dealer. Hicks was a neighbor of the Plaintiffs, living at or near 921 Yeoman, Waukegan, Illinois.

13. Defendant Officers Foy, Dador, Zimmerman and other Defendant Officers, approached and arrested the suspect Hicks. His home at 921 Yeoman was searched and Hicks was charged with unlawful delivery of controlled substances and unlawful possession of controlled substances.

14. The Plaintiffs, and each of them, were in no way involved in the unlawful activities of Hicks and were not suspects in any illegal drug transaction or any other illegal activities.

15. At about 4:45 p.m. Plaintiff Jacqueline Herman was preparing to take all seven of the minor Plaintiffs to the local Boys and Girls Club. She had all seven outside the house preparing to get into the family van. Jacqueline then realized that she did not have all of

her keys and returned to the house to retrieve them, leaving the children outside by the van.

16. While Jacqueline was in the bedroom of her house looking for her keys Jason, Jr., age 6, came running into the house to her, yelling "Drive-by!". Immediately thereafter, the 10 year old twins, Jamell and Javell, came running up the stairs behind Jason, Jr., and Jacqueline could hear her 12 year old granddaughter Jamese yelling or crying in the downstairs dining room.

17. Jacqueline started to come down the stairs where she saw her 12 year old grandson Darius run into the house followed by a man dressed in all black with a balck mask-like visor over his face. The man pushed Darius to the floor, yelling "Get down!" and then put a gun to his head and handcuffed him, face down, on the floor.

18. The man holding a gun to 12 year old Darius' head was immediately followed by 6 or 7 more men similarly dressed and brandishing weapons. When Jacqueline asked "What's going on?" to the men in general, one of them pushed her to the floor and handcuffed her as well.

19. At this time the Plaintiff Shavanna Durham was asleep in the basement. A female dressed in similar attire to the men upstairs awakened her by putting a gun against her nose. The woman then said, "You need to get up now, hold your hands up where I can see them.". The woman did not identify herself and Shavanna thought she was being robbed. Holding the gun to her midback the woman then marched Shavanna up the stairs to the dining room where she observed her mother Jacqueline, her 12 year old daughter Jamese, her sons Javelle and Jason, Jr., and Darius all on the floor, handcuffed, with guns pointed at them.

20. Some more men, again similarly attired, brought the ten year old twins Jamell and Javell and six year old Jason, Jr. down into the basement and ordered them all to lie down on the floor.

21. Eight year old Jocqui had been with the other children when his grandmother went into the house for her keys. He observed a white vehicle pull up near his house. Four people got of the vehicle, all dressed in black with black visor type shileds over their faces. Three of the individuals had guns in their hands, one had a much larger weapon.

22. Jocqui thought the men were robbers and had run into the house to his upstairs bedroom. A female dressed like the others ran in to his room after him, grabbed him by the shirt and pulled him toward the stairs, causing him to fall down 12 to 15 stairs and hurting his back. Jocqui was then ordered to stay still on the floor.

23. At the time of the above described invasion Jason Durham, Sr., was in the basement. He heard a loud noise upstairs and people yelling, "Get down! Get Down!" He ran upstairs where he saw 10 year old Jamell on the floor handcuffed and crying.

24. When 12 year old Jamese saw the men dressed in black with masks she thought they were terrorists and ran into the house and into the basement where her mother Shavana Durham and her step-father Jason Durham, Sr. were. Shavana was sleeping and Jason, Sr. was watching television.

25. 10 year old Jamell ran into the house when he saw the men with guns dressed in black and wearing masks. Jamell ran to the basement where his mother Shavana Durham and his step-father Jason Durham, Sr. were. He observed his mother (Shavana) sleeping and his step-father Jason, Sr., watching television when he got to the basement. Then he heard yelling upstairs, including his brother Jason, Jr., yelling, "Drive-by!", and his sister

Jamese crying.

26. Jamell went upstairs with his step-father (Jason, Sr.). He was still on the stairs when a woman with a mask put a gun right in his face. The woman ordered him to, "Get down!", grabbed him by the front of the shirt and threw him down. Jamell then heard the woman order his step-father Jason, Sr. to, "Get down or I'll shoot". The woman was holding her gun to Jason Sr.'s head. Jason, Sr. obeyed the order and got down on the floor. Jamell observed another of the individuals in black and mask holding a gun to his mother's head. Jamell was crying throughout this time.

27. Jamell observed another masked man grab his grandmother (Jacqueline Herman) by her shirt and throw her down onto the floor. He saw his grandmother's head hit the vent on the floor.

28. Jamell, who suffers from chronic asthma, began to have trouble breathing. He was then allowed to sit in a chair.

29. Fifteen year old Achilles Herman, had also been out in front at the family van waiting to go to the Boy's and Girl's club with his siblings when he saw two minivans coming from opposite directions and converging near where he was. From where he was, he observed seven or eight individuals dressed in black with masks and with weapons force their way into a neighbor's house. Achilles believed this was a robbery in progress.

30. Achilles ran toward the back yard to try to get away. One of the individuals who emerged from one of the vans caught him, grabbed him by the back of his jacket and threw them out of the ground yelling, "Get down!". Achilles was forced face down on the ground, and handcuffed behind his back. The individual who forced him to the ground had never ordered him to stop and never identified himself as a police officer.

31. After having subdued and handcuffed Achilles the individual who subdued him undid one handcuff, got him up and then handcuffed him to a fence. The (metal) handcuffs were applied very tightly and caused Achilles great pain. He was then left alone, handcuffed to the fence for more than thirty minutes while the masked individuals went into his home.

32. After more than a half hour Achilles was released from his handcuffs and brought into the house. There he saw the other members of this family handcuffed and face down on the floor.

33. Plaintiff Jamese Alston, age 12 at the time, had also been with her siblings at the van when her grandmother (Jacqueline Herman) had to go back into the house to retrieve her keys. Jamese went into the house with her. Jamese's grandmother went upstairs to her room to get her keys and Jamese waited for her in the dining room.

34. Within a minute or two Jamese observed 6 year old Plaintiff Jason Durham, Jr., run into the house through the front door, yelling "Drive-by".

35. Jamese then observed a man dressed all in black with a mask type visor over his face come running in through the front door behind Jason Jr. The man had a gun out and yelled for them to "Get the F---- down!" Jamese thought this man was a robber.

36. Jamese tried to run, but the man grabbed her left arm, hit her in the back with his gun and pushed her first into a birdcage and then pushed her head into a cooler. The man kept yelling, "Get the F—down and shut up!" The man then pushed her down onto the floor, put his knee in the back of her neck, pulled her right arm into a hammer lock, grabbed her left arm and handcuffed her face down on the floor.

37. Jamese observed one of the individuals in black throw her grandmother onto the

floor and handcuff her. Jamese was crying throughout this ordeal.

38. Jason Durham, Sr., had been watching television in the basement at the time and place in question when he heard a loud "Boom" sound upstairs and someone yelling, "Get down, get down". Jason, Sr., ran upstairs and saw 10 year old Jamell Smith face down on the floor. A woman was holding a gun to Jamell's head and Jamell was crying. The woman pointed a gun at Jason, Sr., and ordered him to get down on the floor also. Jason got down and was handcuffed on the floor. He was able to observe Darius handcuffed on the floor in the dining room, Jamese in the front room handcuffed behind her head, Jacqueline handcuffed and on the floor and Plaintiff George Herman, also handcuffed.

39. At the time these individuals were invading his home, Plaintiff George Herman (an adult) was in bed asleep. He was awakened by one of the male invaders grabbing his right arm into a painful hammerlock and holding a gun to his head.

40. This male invader then brought George Herman, in handcuffs, into the dining room, where he observed the other family members handcuffed and being held at gunpoint. There were about 20 of the people in black in the home by this time.

41. Unbeknownst to the Plaintiffs, the individuals dressed in black and wearing the black visor type masks were members of the Lake County Metropolitan Enforcement Group, and included the individual officers defendants named herein, as well as other unknown members of the LCMEG. These officers were not wearing police identification and did not identify themselves to the Plaintiffs until all of the Plaintiffs had been arrested and subdued.

42. The Defendant officers stayed in the home of the Plaintiffs for almost two hours,

searching the premises.

43. The Defendant officers did not have a warrant for search or entry into the home of the Plaintiffs, to arrest any of the Plaintiffs or to seize them or their property. .

44. In the process of their search the Defending officers tore up, opened and stepped Plaintiffs' Christmas presents, ripped up mattresses, broke dishes, destroyed a wall, sliced up bedsheets with a knife and generally wrecked the house.

45. Because the officers were tearing up the house and he didn't know why, George Herman volunteered that he had a handgun locked away in a safety box in his bedroom. One of the officers retrieved the key to the box from where George told him he could find it, and retrieved the handgun.

46. The handgun was not registered and George Herman was criminally charged with "Possession of Firearm Without Requisite Firearm Owner's Card", 430 ILCS 65/2 (a) (1). The officers transported George to the Lake County jail, where he was held for about three hours.

47. Before leaving the Plaintiffs' home both Jacqueline Herman and Jamelle Smith began experiencing asthma attacks. The officers were required to call for an ambulance and paramedics came to the scene to treat both of them.

48. George Herman was subsequently required to seek medical treatment for the injury to his right arm as a result of the forceful hammerlock he was put in.

49. Any reasonable police officer, including the named and unknown Defendants in this case either knew or should have known that the searches, seizures of property, seizures of persons, arrest, inappropriate and excessive force and imprisonment of the Plaintiffs was unlawful and unconstitutional.

50. A Fourth Amendment motion to Quash George Herman's Arrest and to Suppress Evidence was filed on behalf of George Herman and the charges against him were subsequently dismissed after a number of court appearances.

51. The Defendant officers did not have probable cause to believe any of the Plaintiffs had committed a crime.

52. There were no exigent circumstances to justify the invasion of Plaintiff's home, the illegal entry and search of the home, or the arrest and imprisonment of any of them..

53. Defendants' conduct toward Plaintiffs was outrageous, malicious, willful and wanton, and conducted with a design to oppress and injure the Plaintiffs and deprive them of their constitutional rights.

54. The Defendants, and each of them, have a duty to uphold the U.S. Constitution, the laws of the United States and the laws and Constitution of the State of Illinois.

55. The County of Lake and the LCMEG have a duty to properly train their officers to ensure that they are trained to uphold the U.S. Constitution, the laws of the United States and the laws and Constitution of the State of Illinois and to preserve the community's rights and well-being, including the rights and well being of the Plaintiffs herein.

56. The actions of the Defendant officers as described herein exhibit deliberate indifference to the rights of the Plaintiffs and are of such an outrageous nature as to shock the conscience of any reasonable person.

57. The LCMEG has a history of failing to adequately train its officers in the use of excessive force and respect of constitutional rights, investigate claims of excessive force and constitutional rights, failing to adequately investigate same, failing to discipline its officers for instances of excessive force and violations of constitutional rights, and

knowingly ignoring same or turning a blind eye to the same.

58. Defendants Lake County and the LCMEG City are responsible for the aforesaid actions of the Defendant officers due to its failure to properly train, discipline, investigate and/ or supervise them.

59. As a result of the actions of the Defendants, the Plaintiffs incurred damages including but not limited to consequential damages, bodily injury, pain, suffering, and personal harm, damage to reputation, mental distress, anguish, humiliation and loss of liberty and property.

**COUNT I**

**EXCESSIVE FORCE AND AGGRAVATED BATTERY CLAIM UNDER SECTION 1983 AGAINST ALL OFFICER DEFENDANTS**

60. Paragraphs 1-59 are realleged the same as though fully pleaded herein.

61. The acts of the named and unnamed police officer Defendants, acting within the scope of their employment with the County of Lake, Illinois and the LCMEG, in forcefully battering, handcuffing, and holding at gunpoint the Plaintiffs as described hereinbefore in a manner as to cause severe and intense pain and otherwise using excessive and unjustifiable force against them caused unpermitted contacts of a harmful and/or offensive nature, and the imminent fear of further bodily harm and trauma, violating Plaintiffs' rights under the Fourth Amendment to the United States Constitution to be secure in their persons, papers and effects and against unreasonable searches and seizures and 42 U.S.C. Sec. 1983.

62. Defendants' conduct constituted a wilful violation of 42 U. S. C. Sec. 1983.

63. As a proximate result of the actions alleged herein, Plaintiffs have suffered damages and irreparable injury.

## COUNT II

## FALSE ARREST IN VIOLATION OF SECTION 1983 AGAINST ALL OFFICER DEFENDANTS

64. Paragraphs 1 through 63 are realleged the same as though fully pleaded herein.

65. The officer defendants arrested Plaintiffs falsely, wrongfully, and without probable cause.

66. Defendants deprived Plaintiffs of their liberty without due process of law, in violation of their Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure, and 42 U.S.C. Sec. 1983.

67. Defendants' conduct constitutes a willful violation of 42 U.S.C. Sec. 1983.

68. As a proximate result of the actions alleged herein, Plaintiffs have suffered damages and irreparable injury.

## COUNT III
## WRONGFUL DETENTION AND IMPRISONMENT IN VIOLATION OF SECTION 1983 AGAINST ALL OFFICER DEFENDANTS

69. Paragraphs 1 through 68 are realleged the same as though fully pleaded herein.

70. The Officer Defendants detained and imprisoned Plaintiffs falsely, wrongfully, and without reasonable suspicion or probable cause.

71. Defendants deprived Plaintiffs of their liberty without due process of law, in

violation of the Fourteenth Amendment and 42 U.S.C. Sec.1983.

72 Defendants' conduct constitutes a willful violation of 42 U.S.C. Sec. 1983.

73. As a proximate result of the actions alleged herein, Plaintiffs have suffered damages and irreparable injury.

**COUNT IV**
**AGGRAVATED ASSAULT AND BATTERY UNDER STATE LAW AGAINST ALL DEFENDANT OFFICERS**

74 . Paragraphs 1- 73 are realleged the same as though fully pleaded herein.

75. The actions of the named and unnamed Defendant officers , acting in the scope of their employment with the County of Lake, Illinois and LCMEG in intentionally and maliciously threatening, hitting, pushing, handcuffing and otherwise battering Plaintiffs caused an unpermitted contact of a harmful and/or offensive nature, and the imminent fear of further bodily harm and trauma to which Plaintiffs did not consent, and thus constituted aggravated assault and battery against Plaintiffs under laws of the State of Illinois.

76. The Defendant officers acted willfully, maliciously, and in wanton disregard for Plaintiffs' rights.

77. As a result of the practices alleged herein, Plaintiffs have suffered damages and irreparable injury.

**COUNT V**

**FALSE ARREST UNDER STATE LAW AGAINST ALL DEFENDANT OFFICERS**

78. Paragraphs 1-77 are realleged the same as though fully pleaded herein.

79. The Defendant officers caused the arrest of the Plaintiffs falsely, wrongfully, and without reasonable grounds or probable cause to believe that he had violated any law.

80. The actions of the Defendant officers constituted false arrest under the laws of the State of Illinois.

81. As a proximate result of the willful and wanton actions alleged herein, Plaintiffs have suffered damages and irreparable injury.

**COUNT VI**

**FALSE IMPRISONMENT UNDER STATE LAW AGAINST ALL DEFENDANT OFFICERS**

82. Paragraphs 1-81 are realleged the same as though fully pleaded herein.

83. The Defendant officers individually and in concert with each other caused the detention of and imprisoned Plaintiffs falsely, wrongfully, and without reasonable grounds or probable cause to believe that they had violated any law.

84. The actions of the Defendant officers constituted false imprisonment under the laws of the state of Illinois.

85. As a proximate result of the willful and wanton actions alleged herein, the Plaintiffs have suffered damages and irreparable injury.

**COUNT VII**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER STATE LAW AGAINST ALL DEFENDANT OFFICERS**

86. Paragraphs 1-85 are realleged the same as though fully pleaded herein.

87. The actions of the Defendant officers as described herein were calculated and done with the deliberate intention of the conflicting emotional distress upon the plaintiffs.

88. The actions of the Defendant officers constituted the intentional infliction of emotional distress upon Plaintiffs under the laws of the State of Illinois.

## COUNT VIII

**VIOLATION OF PLAINTIFFS COMMON LAW RIGHT TO PRIVACY UNDER STATE LAW AGAINST ALL DEFENDANTS**

89. Paragraphs 1-88 are realleged the same as though pleaded herein.

90. The actions of the Defendant officers as described herein violated the Plaintiffs' common law rights to privacy under the laws of the state of Illinois.

## COUNT IX

**GEORGE HERMAN CLAIM OF MALICIOUS PROSECUTION UNDER STATE LAW AGAINST ALL OFFICER DEFENDANTS**

91. Paragraphs 1-90 are realleged the same as though fully pleaded herein.

92. Plaintiff George Herman was subjected to judicial proceedings for which there was no probable cause in that any reasonable police officer would know that the only evidence against him was the fruit of an illegal search and seizure and would be inadmissable in court. The Defendant officers none the less instituted the criminal proceedings against him willfully, wantonly, and maliciously.

93. At George Herman's initial court appearance the proceedings were terminated in the his favor, and the charges dismissed, establishing his innocence.

94. The officer Defendants instituted the above described actions in an attempt to cover up and justify Defendants' offensive, illegal and malicious acts and conduct in wrongfully arresting and detaining Plaintiff George Herman and otherwise violating his rights.

95. The actions of the Defendant officers constituted Malicious Prosecution under the laws of the State of Illinois.

96. As a result of the wilful and wanton actions alleged herein, Plaintiff has suffered damages and irreparable injury.

**COUNT X**

**VIOLATIONS OF ILLINOIS CONSTITUTION AGAINST THE OFFICER DEFENDANTS**

97. Paragraphs 1-96 are realleged the same as though fully pleaded herein.

98. The actions taken by the Defendant Officers resulted in Plaintiffs being denied their state constitutional rights to be secure in their persons; to be free from unreasonable searches and seizures; to due process of law and equal protection of the laws, as provided by the Illinois Constitution, Article 1, sections 1, 2 and 6, and were a direct and proximate cause of Plaintiffs' injuries as set forth above.

WHEREFORE, Plaintiffs pray for the following relief:

a. Trail by jury on the issues raised in this Complaint;

b. That a declaratory judgment be issued that Plaintiffs' rights have been violated as

alleged above and that the practices complained of herein are unlawful and violative of the Constitutional, common law, and statutory rights of Plaintiff as alleged herein;

c. That the Court permanently enjoin Defendants, their agents, successors, officers and employees and those acting in concert with them from engaging in each of the unlawful practices, policies, customs and usages set forth herein, and from continuing any and all other practices shown to be in violation of applicable law;

d. That Plaintiff recover from the Defendants pre and post judgment interest, compensatory, consequential and punitive damages for emotional pain, suffering, personal injury, inconvenience, embarrassment, humiliation, injury to reputation, willful and wanton conduct with the intent to cause personal harm, and other non-pecuniary losses and for any other damages to which Plaintiff may be entitled to under federal and / or state law;

e. That Plaintiff be awarded the costs and disbursements of this action, including reasonable attorney's fees pursuant to the Civil Rights Attorneys Fee Award Act of 1976, 42 USC Section 1988 and any other attorney fee statutes; and

f. Such other relief as the Court deems just and proper.

One of the Attorneys for Plaintiff

GREGORY X. GORMAN
542 South Dearborn
Suite 1060
Chicago, IL 60605
312) 332-4240

JAMES A. STAMOS
61 W. Superior St.
Chicago, IL 60610
(312) 243-1722