IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE HERMAN, et al., | ) | |
| | ) | No. 06 C 6888 |
| Plaintiffs, | ) | |
| | ) | Judge Elaine Bucklo |
| v. | ) | Magistrate Judge Cole |
| | ) | |
| COUNTY OF LAKE, ILLINOIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

FILED
MARCH 2, 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DEFENDANT OFFICERS RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants OFFICERS DUMONT, FOY, GRUNDER, JIMENEZ, KROPP, RODRIGUEZ, SULLIVAN, TOKARZ, and ZIMMERMAN, (hereinafter "Defendant Officers"), by and through their attorney LISA MADIGAN, Attorney General of the State of Illinois, hereby oppose Plaintiffs' Motion for Partial Summary Judgment, as follows:

**PRELIMINARY STATEMENT**

The fatal flaw in Plaintiffs' motion for partial summary judgment is that it ignores the reality that the parties heavily dispute the most important facts in this case. Plaintiffs argue that Defendants improperly entered and searched their home, but have failed to make any allegations regarding any search in their Amended Complaint. Plaintiffs also claim that the officers terrorized them by pointing weapons at them. Nevertheless, Plaintiffs seek summary judgment on four counts: False Arrest (Count II), Wrongful Detention (Count III), False Arrest under state law (Count V) and Wrongful Detention under state law (Count VI). Plaintiffs' claims must fail because the law regarding the state claims mandates judgment for the defendants and against the plaintiffs. In addition, Defendant Officers maintain that they followed a subject believed to be fleeing the scene

of a house where drug activity was taking place during an undercover drug buy/bust operation. Waukegan also received a signed consent to search form from Plaintiff George Harmon (which Plaintiffs conveniently pretend is not part of the evidence in this case). Viewing the facts in the light most favorable to the defendants establishes that at least one of the officers present at the scene did see subjects running from the direction of 921 Yeoman St. after the officers had been given an arrest signal. Based on their observations, certain officers chased the subjects into Plaintiffs' home. The parties dispute the events subsequent to the officers' entry into the home, making summary judgment for the plaintiffs an inappropriate remedy. In summary, Defendant Officers dispute Plaintiff's account of the events of December 14, 2004, resulting in a case replete with genuine issues of material fact.

## SUMMARY OF FACTS[1]

The defendant officers were employed by various law enforcement agencies while acting as agents for the Lake County Metropolitan Enforcement Group ("LCMEG"). (¶¶6-13). LCMEG is a combination of units of local government established under the Intergovernmental Drug Laws Enforcement Act, 30 ILCS 715/1 et seq. (LGMEG SOF ¶¶ 1-3). On or about December 14, 2004, Defendant Officers went to the house located at 921 Yeoman St., Waukegan, IL pursuant to a pre-arranged sale of crack cocaine with a known drug seller outside of the seller's place of residence at the same address. (LGMEG SOF ¶ 6). At approximately 4:40 p.m. the "buy" had occurred and Special Agent Foy activated the arrest signal. Foy left the area after the arrest signal was given. (¶ 32). Agent Willets does not believe that he was present for the operation on December 14, 2004.

---

[1] All citations to ¶ refer to the numbered paragraphs of Defendant Officers' Local Rule 56.1(b)(3)(C) Additional Statement of Material Facts unless otherwise indicated.

(¶ 34). Sullivan does not recall being present inside any house on December 14, 2004. (¶ 30). Sullivan did not have contact with anybody that day; he followed another agent up a driveway and saw the agent take a suspect into custody. (¶ 31). Agent Nasbaum did not ever leave the area of 921 Yeoman. (¶ 35). Agent Hobson's responsibility was at Hicks' property and he did not leave that responsibility until the operation was over. (¶ 37). Pettorelli was injured by a car door while pulling into Hicks' property. As Pettorelli attempted to exit the vehicle, the vehicle door struck a fence post and then struck him. Hobson checked on Pettorelli in the driveway. (¶ 40). Agent Wubben stayed with Hobson in the driveway of 921 Yeoman, where they had a subject outside. (¶ 38).

According to the LCMEG Report, Agent Free approached the area of 921 Yeoman. (LGMEG SOF ¶ 6). In addition, LCMEG Agent Gara saw two subjects running in a direction away from 921 Yeoman and toward 915 Yeoman. He also saw Agent Free follow the subjects to the house located at 915 Yeoman. (¶¶ 50, 51). At the time, Plaintiffs lived at 915 Yeoman, which is located two houses to the north of 921 Yeoman. Gara ran directly to the back of the house at 915 Yeoman to prevent anyone from exiting the house from the rear, and he did not see anyone in the backyard. (Response to PSOF, ¶¶ 9-11). Agent Grunder saw Agent Free chasing a subject on Yeoman Street while heading south. (¶ 19). Agent Sullivan also saw several people standing in the vicinity of the buy bust operation. Once the buy bust began, people ran. (¶ 48; Response to PSOF, ¶ 8).

Defendant Officers deny Plaintiffs' claims that officers held guns to their heads, pushed them or slammed them tot he floor or against items inside the house located at 915 Yeoman. Response to PSOF, ¶¶ 37, 39, 40, 44, 46, 49-51, 53, 54, 56-58). Plaintiffs Jocqui Wardell and Javell Smith gave contradicting testimony regarding a female officer allegedly tripping Jocqui on the stairs,

namely, Jocqui saw the agent at the top of the stairs when he tripped while Javell saw the agent at the bottom of the stairs when Jocqui tripped. (Response to PSOF, ¶¶ 51, 52, 55).

## STANDARD

A party seeking summary judgment has the burden of showing that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed.R.Civ.P. 56. Once a summary judgment motion has been filed, the non-moving party must show through specific evidence that a triable issue of fact remains on issues it bears the burden of proof at trial. *Liu v. T & H Machine, Inc.,* 191 F.3d 790, 797 (7th Cir.1999). *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir.2003) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.").

When an arrestee challenges the officers' description of the facts and presents a factual account where a reasonable officer would not be justified in making an arrest, then a material dispute of fact exists. *Morfin v. City of East Chicago,* 349 F.3d 989, 1000 n. 13 (7th Cir. 2003) (citing *Arnott v. Mataya,* 995 F.2d 121, 124 (8th Cir.1993)). Because the facts surrounding the incident of December 14, 2004 are disputed by the parties, summary judgment is inappropriate.

## ARGUMENT

**I.     GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING PROBABLE CAUSE**

Plaintiffs argue that they reasonably believed that Defendant Officers had no reason to be present on December 14, 2004 because they officers did not wear police markings or identify themselves. [Doc. No. 68 Memorandum at 11-12]. That argument fails because it misstates the law. *See Abdullahi v. City of Madison,* 423 F.3d 763, 768 (7th Cir.2005) (reversing the grant of summary

judgement in favor of the officers and city for excessive force claim noting that for summary judgment purposes a court may not assess the credibility of witnesses, choose between competing inferences, or balance the relative weight of conflicting evidence). The court found that "such a credibility determination at summary-judgment stage constitutes error" and sent the issue to the trier of fact for resolution. *Morfin,* 349 F.3d at 999 (citations omitted); *see also Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir.2003) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)) ("Where the material facts specifically averred by one party contradict the facts averred by a party moving for summary judgment, the motion must be denied").

Plaintiff's argument also fails because their mental impressions are not material facts for purposes of determining probable cause. Probable cause does not require evidence sufficient to support a conviction; it does not even require evidence demonstrating that it is more likely than not that the suspect committed a crime. *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir.2000). "So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *Id.* An officer is considered to have acted with probable cause " 'if, at the time of the arrest, the facts and circumstances **within the officer's knowledge** ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *Id*. at 686 (*quoting Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir.2007) (emphasis added)(internal quotation marks omitted)). When evaluating whether probable cause existed, the courts do not view the facts " 'as an omniscient observer would perceive them' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.' " *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir.2006)

(*quoting in part Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir.1998). Probable cause may be determined as a matter of law, but " '[i]f there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them' " a jury must decide whether there was probable cause. *Chelios*, 520 F.3d at 686 (*quoting Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir.1993)). The Supreme Court has cautioned courts to take into consideration the fact that " 'police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.' " *Id.* (quoting *Graham v. Connor,* 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Even if a retrospective review of the facts revealed that Plaintiffs did not, in fact, have any connection to the drug buy taking place two houses down from 915 Yeoman, the reasonable belief by Defendant Officers that Plaintiffs did so is not a fact that is in dispute. *See United State v. Watts,* 535 F.3d 650, 655 (7th Cir.2008) (stating that "[p]robable cause means 'a probability or substantial chance,' not absolute certainty") (quoting in part *United States v. Sidwell,* 440 F.3d 865, 869 (7th Cir.2006)). Agent Grunder saw Agent Free chasing a subject on Yeoman Street while heading south. (¶ 19). Agent Sullivan also saw several people standing in the vicinity of the buy bust operation. Once the buy bust began, people ran. (¶ 48; Response to PSOF, ¶ 8). In addition, Agent Gara saw two subjects running in a direction away from 921 Yeoman and toward 915 Yeoman. He also saw Agent Free follow the subjects to the house located at 921 Yeoman. (¶¶ 50, 51). If someone was running from the perimeter, agents would follow that person, identify themselves as police, and tell the person to stop. If the person continued to run, agents would catch the person and place him in handcuffs. (¶ 52). Gara has personally observed subjects flee the scene of a buy bust operation and discard a weapon. Gara also has experience with lookouts, or counter-surveillance, which involves

anyone involved in a transaction on an outside perimeter. Such a person could be standing on a street corner or alongside a house. Once the police arrive, the lookout notifies the main target or a consort, and runs away. (¶ 50). Based on Gara's training and experience and the information that he heard over the radio, he believed that the two subjects he saw had facilitated or participated in a hand-to hand transaction of a narcotic, which, at minimum, is a Class Four felony. (¶ 54). It is clear from the record that a jury will have to weigh the evidence and determine which witnesses to believe, as there are genuine issues of material fact.

Plaintiffs' argument that certain officers' lack of independent first-hand knowledge or belief that criminal activity was taking place at 915 Yeoman warrants summary judgement in Plaintiffs' favor lacks merit. Where officers are working together in investigating a crime, the knowledge of each constitutes the knowledge of all, and probable cause can be established from all the information collectively received by the officers. *People v. Franzen*, 251 Ill.App.3d 813, 827, 190 Ill.Dec. 847, 622 N.E.2d 877 (1993); *People v. Fox*, 155 Ill.App.3d 256, 263-64, 108 Ill.Dec. 314, 508 N.E.2d 475 (1987). Further, "when police officers are faced with what is essentially a fluid situation, they [must be] permitted to graduate their responses to the demands of the particular circumstances confronting them." *United States v. Weaver*, 8 F.3d 1240, 1243 (7th Cir.1993). Given the fact that the agents were conducting an undercover buy bust operation when Agents Grunder, Sullivan, Gara and Free observed some of the Plaintiffs running away from the area of the operation, and given the totality of the circumstances, a jury could reasonably conclude that their actions were reasonable. (¶¶ 19, 48, 50-51).

Finally, the parties dispute each and every event alleged by Plaintiffs regarding the alleged incidents inside Plaintiffs' house. The officers did wear items on their clothing that identified them

7

as police officers. (¶¶ 41-47; (Def Officers' Resp to PSOF ¶¶ 8, 11, 37, 41, 42, 44, 46, 47). Defendant officers deny slamming anyone to the ground or pointing weapons at the plaintiffs, particularly at their heads. (Def Officers' Resp to PSOF ¶¶ 37, 39, 40, 44, 46, 49-51, 53, 54, 56-58). Defendants also deny causing any property damage to Plaintiffs' house. (Def Officers' Resp to PSOF ¶ 60). Plaintiffs' own testimony lacks consistency regarding a LCMEG agent deliberately tripping one of the minor plaintiffs, and Defendant officers deny that it happened. (Def Officers' Resp to PSOF ¶¶ 51, 52, 55)

      A.    **A Genuine Issue of Material Fact Exists Regarding George Herman's Consent to Search the House**

Plaintiffs failed to mention that the State Defendants possess a consent form with George Harmon's signature. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The signed consent form is highly probative evidence that Plaintiff authorized the defendants to search the house. *Russell v. Harms*, 397 F.3d 458, 476 (7th Cir. 2005). Further, Zimmerman obtained George Harmon's signature before any officers searched the house. [¶¶ 14-15]. The material factual dispute mandates a denial of summary judgment for Plaintiffs.

**II.    THE STATUTE OF LIMITATIONS BARS ALL STATE LAW CLAIMS**

   The statute of limitations in the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/8-101, provides that state law claims must be brought within one year of the date the cause of action accrued, thereby barring all state law claims alleged in the Amended Complaint, namely, Counts IV, V, VI, VII, VIII and IX.

745 ILCS 10/8-101 provides:

> (a) No civil action other than an action described in subsection (b) may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued.
>
> (b) No action for damages for injury or death against any local public entity or public employee, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of those dates occurs first, but in no event shall such an action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death.
>
> (c) For purposes of this Article, the term "civil action" includes any action, whether based upon the common law or statutes or Constitution of this State.
>
> (d) The changes made by this amendatory Act of the 93rd General Assembly apply to an action or proceeding pending on or after this amendatory Act's effective date, unless those changes (i) take away or impair a vested right that was acquired under existing law or (ii) with regard to a past transaction or past consideration, create a new obligation, impose a new duty, or attach a new disability.

All of the Defendants were employed by local police departments. [¶¶ 6-13]. As stated in Plaintiffs' Complaint and Motion for Summary Judgment, the events relevant to this cause of action occurred on December 14, 2004. This suit was filed on December 13, 2006. The statute of limitations for all of Plaintiffs' state law claims ran on December 14, 2005. "While the two year period still applies to §1983 claims against such (local government entities and their employees), the one-year period applies to state-law claims that are joined with a §1983 claim." *Williams v. Lampe*,

399 F.3d 867, 870 (7th Cir. 2005). The state law claims are therefore barred by the statute of limitations and judgment should be entered in favor of all Defendants on Counts IV, V, VI, VII, VIII and IX.

### III. PLAINTIFFS ARE UNABLE TO IDENTIFY INDIVIDUAL OFFICERS

Plaintiffs' proof suffers from a fatal lack of identification of the individual officers who allegedly violated Plaintiffs' rights. Plaintiffs have offered up no more solid proof of the identity of any individual officer than "dressed all in black with a ski mask." The specific problems of Plaintiffs' identification of the State Defendants are addressed below.

In *Hessel v. O'Hearn*, 977 F.2d 299 (7th Cir. 1992), the Seventh Circuit upheld summary judgment for the defendants accused of stealing certain items of property during a search for illegal gambling devices when the plaintiff was not able to identify which of the officers committed the theft. "We may assume that the stolen items . . . were taken by one of the 14 defendants. That is not good enough to fend off summary judgment. The plaintiffs allege no conspiracy . . . There isn't even a doctrine of respondeat superior in constitutional tort cases, and anyway the agencies that employed the defendants are not themselves names as defendants. . . that leaves the principle of collective punishment as the sole possible basis for liability in this case. Happily that principle is not – not generally, anyway – a part of our law. Proximity to a wrongdoer does not authorize punishment." *Id.* at 305 (internal citations omitted).

#### A. Certain Defendants Were Not Present at Plaintiffs' House

It is undisputed that Defendants Hobson, Nasbaum, Willets, Foy, Sullivan, Pettorelli and Wubben were not present at Plaintiffs' house on December 14, 2004. The undisputed evidence is that these individuals never went to 915 Yeoman and never entered the house at that location. [¶ ¶

10

30-40]. Therefore impossible for these Defendants to have taken part in any action alleged to have violated Plaintiffs' rights. Consequently, summary judgment should be granted in their favor on all counts.

### B. Certain Defendants Were Not at the Locations in the House Described by Plaintiffs

Plaintiffs have described with particularity where certain actions allegedly took place. Likewise, certain Defendants have established through their undisputed testimony that they were not present in those locations.

Defendants Dador, Grunder, Jiminez, Kropp, Schultz and Zimmerman were never present upstairs or in the basement of the home on December 14, 2004. [¶¶ 16-22]. To the extent that any action which deprived Plaintiffs of their rights took place on those levels of the home, summary judgment in favor of these Defendants is appropriate.

Additionally, Defendant Rodriguez was never present on the upper level of the home at any time. [¶ 23]. To the extent that any action which deprived Plaintiffs of their rights took place on the upper level of the home, summary judgment in favor of Defendant Rodriguez is appropriate.

### C. Certain Defendants Do Not Match Descriptions Given by Plaintiffs

Plaintiffs have described in specific detail the clothing worn by the individuals and whether the individual had their weapon drawn. Other than these descriptions, Plaintiffs have provided no identification of any individual Defendant. The detailed description are provided below. To the extent that the undisputed facts establish that certain Defendants' do not match the descriptions provided by Plaintiffs, summary judgment in favor of those Defendants is appropriate.

#### 1. Ski Masks and All Black Clothing

There is undisputed testimony that Defendants Tokarz, Kropp, Grunder, Zimmerman and Free were not wearing ski masks on December 14, 2004. (¶¶ 1-5). All of the Defendants who were present at Plaintiffs' house on December 14, 2004, were wearing clothing which clearly identified them as police officers. (¶¶ 41-47). Plaintiffs have provided no contrary evidence to raise a question of material fact as to the truth of that testimony, nor have they otherwise specifically identified any of these Defendants as an individual who took any action which is alleged to have violated Plaintiffs' rights.

Plaintiff Akilus describes the individual who jumped out of the van at 921 Yeoman as dressed all in black from head to toe, with a black ski mask over his head and with no police markings on the clothing. [PSOF ¶ 9]. As Akilus was grabbed while he attempted to run away by jumping a fence, he looked up to see two men wearing black ski masks. [PSOF ¶¶ 10-12]. Plaintiff Jamese saw a man dressed all in black with a ski mask over his face come into the home. [PSOF ¶¶ 37]. Plaintiff Joqui saw a woman dressed all in black with a ski mask. He did not see anything identifying her a police officer. [PSOF ¶¶ 51]. One of the men in black yelled at him. [PSOF ¶ 52]. Plaintiff Jamell came up from the basement to see an individual dressed all in black with a ski mask over his face. He also saw other people with ski masks over their faces. [PSOF ¶¶ 56-58]. Plaintiff George saw a person dressed all in black and with a ski mask came into the bedroom and started going through the closets and drawers. [PSOF ¶¶ 40-43]. Plaintiff Shavanna saw two people in the basement bedroom who were dressed all in black and wore ski masks. [PSOF 44]. Plaintiff Jason Sr. saw a person in the kitchen wearing all black with a ski mask over the face. [PSOF not indicated]. One of the people in black had a gun pointed at Plaintiff Jason Jr. [PSOF 54]. Based on the

evidence, Officers Tokarz, Kropp, Grunder and Zimmerman could not have acted as the Plaintiffs claim.

### b. Defendants' Weapons

There is undisputed testimony that Defendants Dador, Grunder, Rodriguez and Schultz did not have their guns drawn during the incident at 915 Yeoman. [Defendants' Additional Facts 24-28]. Plaintiffs have described in specific detail whether the Defendants' weapons were drawn during the episode on December 14, 2004. To the extent that the undisputed facts establish that a certain Defendant did not have his weapon drawn, summary judgment in favor of that Defendant is appropriate.

Akilus could see one of the men who grabbed him pointing a gun at his head. [PSOF 11-12]. Jamese saw that the first man who came into the house had a gun in his hand. He was holding a gun to her head, right by her face on the right side.[PSOF 37]. Darius was grabbed by a man who put a gun to his head. [PSOF 49]. The woman Joqui saw was holding a gun in both hands. [PSOF 51]. A man in black put a gun to his head. [PSOF 53]. An individual held a gun to Jason Jr.'s head. [PSOF 54]. Jamell came upstairs and saw someone pointing a gun in his face. [PSOF 56-58]. A person came into the basement bedroom and placed gun to George's head. [PSOF 40-43]. Shavanna woke in the basement to find someone pointing a gun in her face. [PSOF 44]. The person Jason Sr. saw in the kitchen was pointing a gun at him. [PSOF not indicated]. Based on the evidence, Officers Dador, Grunder, Rodriguez and Schultz could not have acted as the Plaintiffs claim.

### CONCLUSION

In light of the foregoing, because there are genuine issues of material fact regarding Plaintiffs' claims, Defendants respectfully request that this Honorable Court deny the plaintiffs'

13

motion for partial summary judgment on Counts II, Count III, Count V, and Count VI; enter an order ruling in favor of the Defendant Officers and against the plaintiffs; and grant any such relief the Court deems appropriate.

               Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois      By:  *s/Shirley Calloway*
                SHIRLEY CALLOWAY
                JAMES LANG
                Assistant Attorneys General
                General Law Bureau
                100 W. Randolph St., 13th Floor
                Chicago, Illinois 60601
                (312) 814-5581/(312) 814-5694