THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE HERMAN, et al.,
        Plaintiffs

    -vs-

COUNTY OF LAKE, et al.,
        Defendants.

No. 06 C 6888
Judge Bucklo
Magistrate Judge Cole

PLAINTIFFS' MOTION *IN LIMINE*

    The Plaintiffs, by their attorneys Gregory X. Gorman and James A. Stamos, move this court to enter a an order *in limine* barring Defendants, their counsel, or witnesses from suggesting to the jury, either directly or indirectly, any of the matters hereinafter set forth without first obtaining permission from the court, outside the presence and hearing of the jury, as follows:

**A. Consent**

    On December 14, 2004 at about 4:30 p.m., the Defendant officers conducted a warrentless entry into Plaintiffs' home, a warrantless search of the home from top (2nd Floor) to bottom (basement), and a warrantless seizure and arrest of their persons. The first officer to enter the home was Agent Ken Free (now deceased and no longer a party to the suit), followed by Defendant Agents Johnny Jiminez and Wendy Dumont.

Plaintiff George Harmon was laying face down in bed at the time. He was awakened by somebody grabbing him by the right wrist and pulling it up behind his back in a hammer lock. He could feel a weapon held to his head touching it behind the left ear. This person told him, "You need to get up." Harmon told this person, who was one of the three agents, that he had a handgun under the bed in a lockbox and that there was a key on the dresser. The agent found the key, opened it and found the handgun. Harmon was handcuffed and brought into the dining room. ( Dkt. # 67, ¶40-41)

Defendant Special Agent Patrick Zimmermann was the supervising officer at the scene, arriving after Free, Jiminez and Dumont. Upon arrival in the Harmon home Zimmerman observed that Free, Jiminez and Dumont were already there. Zimmerman observed that a number of "civilians" had been rounded up into the dining room to secure the premises. They included "an elderly woman" (Plaintiff Jacqueline Harmon) who was having trouble breathing, "three adults, two kids and a teenager...There may have been more". One of the adults, George Harmon, was already in handcuffs and Zimmerman was advised by Agent Free that Free had found a handgun in the house and that George Harmon had told him where it was. Zimmerman called the Waukegan Firee Department paramedics to assist Jacqueline. According to Zimmerman he asked Harmon to sign a "Consent to Search at around 5:00 p.m.., about a half-hour after the warrantless entry, the search and the arrest of the Plaintiffs. (Plaintiff Exhibits Dkt.. #59, Ex. P, p. 18- 28).

Consent to the search of one's home is not voluntary when it is obtained after the police have already unlawfully barged in, searched the house, and arrested its members. *United States of America v. Collins,* 510 F. 3d 697, 700 (7th Cir. 2007)   The lack of voluntariness is further demonstrated by the situation in which Harmon was requested to "consent":   He was in handcuffs and under arrest, his children and grandchildren were under arrest (*i.e* not free to leave) and detained,

his wife was in distress and in need of medical attention. This supposed after the fact consent cannot be said to be voluntary under such circumstances and the Defendants should not be allowed to argue or even suggest to the jury that there was voluntary consent to the search of the house. Defendants should be ordered to refrain from such suggestion and the "Written Consent" should not be allowed into evidence.

**B.  Mark Rasmussen.**

Mark Rasmussen has been named by the Defendants as a "may call" witness. Rasmussen was not identified as a potential witness in Defendants' Rule 26 (a) Disclosures or in its Answers to Interrogatories and Plaintiffs' counsel has no idea what the substance of his testimony on behalf of these Defendants might be.

Rasmussen **was** listed as a potential witness Lake County Metropolitan Enforcement Group for purposes of testifying as to LMEG's training and procedures. LCMEG has since settled with Plaintiffs.

In the event Rasmussen is allowed to testify his testimony should be limited, and he should be directed, not to testify as to what his ideas are as to the law on search and seizure, hot pursuit, and exigent circumstances. He testified at length, and incorrectly, on those subjects at his deposition. Plaintiffs are concerned that if Rasmussen is allowed to testify as to his incorrect notions of what the law is the jury will be tainted and prejudiced.  Only the court should direct the jury as to these issues.

**C.  Exclusion of Witnesses**

Plaintiffs' move that all nonparty witnesses, including witnesses who have settled or been dismissed out, he excluded from the courtroom during trial.

WHEREFORE, Plaintiffs request this court to grant their motions *in limine* as specified above.

                                       //s// Gregory X. Gorman
                                       One of the Attorneys for Plaintiffs

| Gregory X. Gorman | JAMES A. STAMOS |
|---|---|
| 220 S. Halsted Street | 61 W. Superior St. |
| Suite 200 | Chicago, IL 60610 |
| Chicago, IL 60661 | 312-243-1722 |
| 312-332-4240 | |